### SIMEON A. EVANS *vs.* TOWN OF STANTON.

#### February 13, 1877.

**Towns—Contract for Bridge held not Void as Involving an Expenditure or Indebt-
edness Greater than had been Voted at Town Meeting.**—The county commis-
sioners of Goodhue county appropriated $200 to the construction of a certain
bridge, and directed county orders for the amount to be issued, on the order
of the chairman of the board of supervisors of the town of Stanton, in
which the bridge was to be constructed.    The town of Stanton, at its annual
town meeting, voted to raise $700 for roads and bridges, especially for. the
bridge mentioned by the county commissioners, and another.    After these
appropriations, the town entered into a contract with the plaintiff to con-
struct the bridges for the price of $900, to be paid in town and county orders.
*Held*, that, as the parties are presumed to have contracted with reference to
the two appropriations, and the town and county orders mentioned in the
contract were those at the disposal of the town under such appropriation,
the contract was not one incurring a town debt, or making an expenditure of
town funds, to a greater amount than was voted at the town meeting, and
the contract was therefore valid.

**Acceptance of Bridge by Committee on Bridges, a Good Acceptance by County
Board.**—The contract provided that one of the bridges should be accepted by
the board of county commissioners.    *Held*, that, as the acceptance of the
bridge would naturally come within the duties of a committee on roads and
bridges, appointed by the county commissioners, the act of the com-
mittee in accepting the bridge would be *prima facie* the act of the com-
missioners, and proof of acceptance by a majority of the committee was
proper.

Appeal by defendant from an order of the district court for Goodhue county, *Crosby*, J., presiding, refusing a new trial.

*J. C. McClure* and *C. McClure*, for appellant.

*Williston & Hall*, for respondent.

GILFILLAN, C. J. It appears from the evidence in this case that, on March 9, 1869, the board of county commissioners of the county of Goodhue, in which county the defendant town is situate, by resolution, changed an appropriation of $200, previously made by the board for a bridge at one place, so as to be expended for a bridge at another place, and instructed the county auditor to issue orders to the amount of said appropriation, upon the order of the chairman of the board of supervisors of defendant. On April 6th, following, at the annual town meeting of the defendant, it was voted to raise $700 for roads and bridges especially for two designated bridges, one of them the bridge mentioned in the resolution of the board of county commissioners; said money to be applied at the discretion of the supervisors. On October 19th, following, the town entered into a contract with plaintiff, by which plaintiff agreed to build the two bridges, and the town to pay him therefor $900, in town and county orders, the work to be accepted by the board of supervisors, and one of the bridges (that mentioned in the resolution of the county commissioners) by the board of county commissioners. It appears that the county orders were issued and paid to plaintiff on his contract, and other payments made, which, with the county orders, left a balance of the contract price of $216.66, to recover which this suit is brought.

The first and important question in the case is, was the contract valid? It is claimed that the defendant's board of supervisors had no authority to bind the town by a contract to pay, for building these bridges, any greater sum than $700, that being the amount voted at the preceding annual town meeting to be expended upon roads and bridges. The

proposition is made that no town can contract a debt for any one year, for a specified purpose, in any larger sum than the amount of taxes assessed for such year for such purpose. The assessment for township purposes is based upon the vote at the town meeting. Under Gen. St. c. 10, and Laws 1869, c. 22, we are inclined to think that is correct, and, if there was nothing appearing *dehors* the contract but the vote of the town, we do not see how the contract could be upheld.

The contract, however, is not void upon its face. It is necessary to prove matters outside to avoid it, and it was competent to show outside matters to sustain it. It was proper, also, to show the subject-matters of the contract, and the circumstances connected with them, so that the court, in construing the contract, may stand as nearly as possible in the position of the parties when they made it. The parties must be assumed to have contracted with reference to those circumstances. The contract, by express terms, provides for payment, not in money, but in county orders and town orders. It indicates that there are county as well as town orders which the town has the right to use, and which it agrees to use, in the work contracted for. What these county orders were was open to proof, just as is the identification of a subject-matter in any contract. The statute prohibits the creation of a town debt, or the expenditure of town money, to a greater amount than the assessment for the year. The application, by the town, of a county fund, to the purposes for which it was appropriated by the commissioners, and the application of which was entrusted to the town, would not come within the prohibition. It appears, then, that at the time the contract was made there were, by appropriation of the county commissioners, $200, in county orders, at the disposal of the town for building these bridges, and it does not appear that there were any other county orders at its disposal. Also, that for the same purpose there was at its disposal, by the appropriation of the

town meeting, the sum of $700. Now, that the parties must be presumed to have contracted with reference to these facts, and that the county and town orders mentioned in the contract were those at the disposal of the town under these two appropriations, cannot be doubted. The county appropriation is indicated by the *addenda* to the contract, providing that one of the bridges—the one for which the county had appropriated $200 of its orders—should be accepted by the county commissioners. The contract being, then, in effect, to pay to the plaintiff the amount of the two appropriations, in the orders of the county and town respectively, and not to pay $900 out of the funds raised, or to be raised, by the town, it is not obnoxious to the objection made to it. The charge of the court below on this point, being in accordance with the views we have expressed, was correct.

The point that the breach of the contract set up in the answer is a counterclaim is not well taken. The breach was not pleaded as a counterclaim, but only as a defence.

Proof that the bridge, which, by the contract, was to be accepted by the board of county commissioners, had been accepted by a majority of the committee on roads and bridges of the board of county commissioners, was proper. Such acts would naturally come within the duties of such a committee, and its act would be *prima facie* the act of the board.

Proof that the bridges have stood and been used since their construction was proper, not for the purpose of proving acceptance, but as having some bearing upon the answer and testimony, on the part of defendant, that the bridges were constructed in an unworkmanlike manner, and of bad materials.

Order affirmed.